LUISA LEBRÓN SANTIAGO, ET AL., Appellants, *v.* REGISTRAR OF PROPERTY OF HUMACAO, Respondent.

No. 1133. Submitted December 17, 1943.—Decided March 31, 1944.

*Domínguez & Domínguez* for appellants. The registrar appeared by brief.

Mr. Chief Justice Travieso delivered the opinion of the court.

The District Court of Guayama, by an order of September 25, 1931, declared as sole and universal heirs of Francisco Tomás Vich, who had died *ab intestato* on April 14, 1941, his five children and his widow, Luisa Lebrón Santiago, in the legal portion of usufruct.

The inheritance consisted of four rural properties in the ward of Guardarraya, Patillas, P. R. Two of these properties, one of four acres and the other of one acre, described under letters C and D in the deed, had been acquired by Francisco Tomás Vich while he was unmarried.

Having obtained judicial authorization, said minors, represented by their mother, entered into an exchange contract with Félix Ramos Rivera, whereby they delivered to the latter said rural properties C and D and received in exchange an urban property consisting of a frame house situated on a lot belonging to the Municipality of Maunabo. The transaction was embodied in a public deed which was recorded as to said urban property in the Registry of Property of Humacao, on October 13, 1943.

When making the partition of the inheritance of the deceased Francisco Tomás Vich, the District Court of Gua-

yama, by an order of September 16, 1941, appointed as legal guardian of the minor heirs, José Lebrón, maternal grandfather of the latter, in view of the fact that there was a conflict of interests between said minors and their mother, Luisa Lebrón Santiago. Having complied with these requirements, the partition of the estate was carried out, the widow appearing for herself and on behalf of her son, Francisco Tomás Lebrón, of legal age; Dionisia Tomás Lebrón, a minor, emancipated by marriage, represented by her husband; the minors Guillermina, Eva, and Luisa Tomás Lebrón; José Lebrón, maternal grandfather, and legal guardian of the four minors, and the District Attorney of Guayama.

The estate which was partitioned consisted of several rural properties acquired by the deceased during his marriage to Luisa Lebrón Santiago, and of an urban property situated in the town of Maunabo to which we have already referred. In the partition, which was approved by the court, the urban property of Maunabo was adjudicated to the widow for the payment of debts.

Subsequently, when the deed of partition was presented in the Registry of Property of Humacao in order to have the urban property recorded in favor of Luisa Lebrón Santiago, the registrar refused recordation thereof in a ruling, dated November 3, 1943, which reads as follows:

"Record of the foregoing document, which is a copy of the deed of partition made of the estate of the deceased Don Francisco Tomás Vich in civil case No. 2125 of the District Court of Guayama, together with other documents, is hereby denied, and especially of the copy of deed No. 15 of exchange and payment, executed in Guayama on February 11, 1943, before Notary Celestino Domínguez Rubio, as to the adjudication made in favor of Doña Luisa Lebrón Santiago for the payment of debts of the urban property described under letter 'E', the only one which corresponds to this Registry, for the following reasons:

"(1) Because although §160 of the Civil Code, 1930 ed., provides that whenever in any matter *unemancipated children* have interests

opposed to those of their father, a legal guardian shall be appointed, Dionisia Tomás Lebrón, being a minor and emancipated by marriage, appeared at the partition represented by her husband and by the same legal guardian appointed by the court for the other minors, and not by one of the persons provided by §237 of said code in relation to §232 of the same code.

"(2) Because when said property was acquired by the minors Francisco, Dionisia, Guillermo, Eva, and Luisa Tomás Lebrón, children of said Doña Luisa Lebrón Santiago, by exchange to Don Félix Rivera Ramos of two separate properties belonging to the deceased Don Francisco Tomás Vich which said minors had inherited from the latter, said urban property was liquidated among its co-owners; that Doña Luisa Lebrón Santiago expressly waived, after judicial authorization therefor, her usufructuary right in favor of the exchange, that being her only interest in the property thus exchanged; that she stated that there existed no conjugal right in connection with the same but should there be any she expressly waived the same in favor of said exchange, it having been further agreed that the property acquired by exchange should become the separate property of the minors, and that it appeared recorded as such in the Registry, for which reason said property could not be subject to partition or adjudicated for the payment of debts to a person who was neither the co-owner of the property nor had any interest therein, inasmuch as in the opinion of the subscribing Registrar the only thing that could be done in the partition in regard to the property acquired by exchange was to credit its value to the minors to whom it had already been adjudicated with a separate character; that the provisions of §§409, 1021, and the last paragraph of §1030 of the Civil Code of Puerto Rico, 1930 ed., are applicable and, by analogy, the provisions of §§1001 and 1002 of the same code, and §§600 to 605 of the Code of Civil Procedure, 1933 ed., are also applicable; and

"(3) Because since said property denominated 'E' belongs exclusively to the above-mentioned minors, the fact of adjudicating it to the mother and giving them in exchange a condominium which being conjugal property corresponded to the mother in another property, is tantamount to an exchange, and since minors are involved the *previous* judicial authorization required by §§614, 615 and 616 of the Code of Civil Procedure 1933 ed., has not been obtained, and that in the registrar's opinion, the approval *a posteriori* of the district court in an act of partition does not have the scope (sic) of the previous judicial authorization required by law in cases of exchange

of property belonging to minors. Cautionary notice is entered for 120 days in favor of Doña Luisa Lebrón Santiago, at folio 28 of volume 8 of Maunabo, property No. 400, note 'A', Humacao, Puerto Rico, November 3, 1943. (Signed) Guillermo Estrella, Registrar.''

■ The first ground relied on by the registrar is that the appearance of Dionisia Tomás Lebrón, a minor emancipated by marriage, at the act of the partition, was not perfected in view of the fact that the attendance of one of the persons provided by §237 of the Civil Code, 1930 ed., was necessary.

It should be noted that in this case the interests of the minor heirs are opposed to those of their mother, Luisa Lebrón Santiago. For this reason the District Court of Guayama, pursuant to §160 of the Civil Code, appointed a representative for said minors. But, according to the language of said Section, the same is applicable only to cases of unemancipated minors, and among the minor children of Luisa Lebrón Santiago there was Dionisia Tomás Lebrón, who had been emancipated by marriage, and who appeared at the act of the partition, represented by her husband and by the legal guardian appointed by the court for all the minors. Thus, since §160, *supra,* is applicable to cases of unemancipated minors, the respondent registrar maintains in his decision that the law was not complied with when a legal guardian was appointed for Dionisia Tomás Lebrón, inasmuch as she was a minor emancipated by marriage.

The Code contains no provision relating to emancipated minors when their interests are opposed to those of their parents. The only Section which deals with this matter is §160 and, as we have already said, it is expressly applicable to cases of unemancipated minors. May this be considered as an omission of the Legislature? Let us see.

Section 237, relied on by the Registrar, was taken from §317 of the Spanish Code; but in our Code it appears in the chapter which deals with emancipation by parental conces-

sion, while in the Spanish Code it is applicable in general to all emancipated children who are 18 years of age but have not attained their majority. (Manresa, *Comentarios al Código Civil Español*, 1925 ed., Volume 2, page 733.)

However in our Code, §239, which was taken from, and partly agrees with, §317 of the Spanish Code, is applicable exclusively to minors emancipated by marriage. Thus, it is our opinion that this Section, and not §237, as maintained by the registrar, is the one applicable to the case at bar. Said Section reads as follows:

"Section 239. A minor, whether male or female, becomes emancipated of right by marriage. Nevertheless, in order to alienate and mortgage any real property or to contract loans, a minor emancipated by marriage shall require the consent of his father, in defaut of his father that of his mother, and in the proper case, that of his tutor."

In form it is almost the same as §237. However, there is a vital difference between them which is evident at first sight. Section 237 provides as follows:

"Section 237. Emancipation capacitates the minor to govern his property and person as if he were of age; but until he attains his majority the said emancipated person cannot make any promise or contract any obligation exceeding in value the amount of his income for one year. Neither can he encumber or sell his real property, without the consent of his father, or in default thereof, that of his mother, and in the proper case, that of his tutor. Neither may he appear in a suit without the appearance of the said persons."

As may be seen, §237 permits the minor emancipated by parental consent to contract any obligation or make any promise without the consent of his father or of his tutor, whenever the same does not exceed in value the amount of his income for one year; §239 does not expressly give this right to the minors emancipated by marriage. On the other hand, §237 forbids one emancipated by parental consent to appear in a suit without the appearance of the persons men-

tioned therein; while, although §239 is silent on this particular, §240 provides: "a minor emancipated by reason of marriage may appear before the district courts to represent his interests in the cases prescribed by law." It is significant that neither of these clauses exists in §317 of the Spanish Civil Code.

In view of the differences existing between both Sections, and since we are of the opinion that §239 is the one applicable to the case at bar, we will analyze the question raised by the registrar in his decision. Was it necessary for the minor emancipated by marriage to appear at the act of the partition represented by any of the persons provided by §239 who are the same persons required by §237, invoked by the registrar? We have already seen that apparently there exists an omission in the Code in the case of an emancipated minor who has a conflict of interests with his parents. Manresa, *supra,* treats this question at p. 560. Commenting on §156 of the Spanish Civil Code, which is equivalent to §160 of our Code, he states:

"In providing for the appointment of a guardian, Section 165 expressly refers to unemancipated children. Emancipation qualifies the minor to control his person and property as if of age; he no longer needs, as a general rule, the intervention of a third person to complete his personality and to defend him. But there are certain acts which he can not perform by himself, such as the alienation of real property, and in this case the law requires the consent of his father, or, in default of the latter, that of his mother, or, in default of both, that of his guardian. When the interests of the parents may be opposed to those of their emancipated children, should a tutor intervene as if the former did not exist, or should a legal guardian be appointed? The case is not really decided by Section 165, nor by Section 317: not by the first, because a legal guardian is only appointed for unemancipated children; nor by the second, because the tutor is appointed in default of the father and the mother."

And commenting on §317 of the Spanish Civil Code, equivalent to §§237 and 239 of our Code, the author further states at page 733:

". . . it is well known that the former (emancipation by marriage, by parental concession, or judicially) produces in the emancipated minor the legal status of true limited capacity, an intermediate status wherein the minor exercise his civil rights to a certain degree without reaching its full capacity." (Parenthetical matter supplied.)

And on page 746 he further states:

"But if the minor was subject to the *patria potestas* when he was emancipated and subsequently his parents died or were incapacitated, since he has no tutor, he must acquire one when the time comes to perform acts or contracts which require his consent . . . ."

"It then follows that in a case like this an ordinary guardianship can not be legally constituted, composed of a tutor, a protutor, and a family council and that a special guardian has to be appointed with limited authority to give consent to the emancipated minor in order to supply his lack of capacity in the act or contract where the law prescribes such requirement.

"Here there is no provision as to the person who shall be appointed special guardian nor by whom such an appointment should be made; but since it is a well-settled rule of construction that the provisions of a law or code for one case are applicable to other analogous cases, unless otherwise provided, we find the solution in Section 165. The *guardian,* who according to said Section should be appointed for the minor, exercises duties analogous to those of the tutor to whom we are referring, since both represent the minor in court and elsewhere in a specific matter. Therefore, according to what that same Section prescribes and as a matter of common sense, the appointment shall be conferred upon the relative of the minor who would be his legal guardian or in default of such, upon some other relative or strange. Pursuant to Section 211, the legal guardianship pertains to the grandparents or brothers of the minor in the order provided therefor: who could have a greater interest or be more earnest in fulfilling such office? And the appointment shall be made by the judge of first instance at the request of the minor himself as prescribed by said Section 165 according to the proceedings established by the law of civil procedure for the curatorship, which is the most proper one, without furnishing bond, because said guardian has nothing to administer nor will he receive any money for the sale since he confines himself to giving his consent to the act if it is beneficial or necessary for the minor."

And on page 748 he states:

"'Needless to say that besides the consent of the father, the mother or the tutor, the married woman needs the permission of her husband pursuant to Sections 60 and 61 as has been stated in the preceding comments."

We fully agree with Manresa, and since his comments are applicable to the question raised herein, we are of the opinion that no error was committed as to the appearance of the minor. It is true that our Legislature has changed in part the limitations imposed by the Spanish Civil Code on the minor emancipated by marriage, allowing him to appear in district courts to represent his interests (§240, Civil Code, 1930 ed.); and it has also eliminated the family council. But this does not affect the applicability of Manresa's comments to the case at bar. The minor appeared, represented by her husband and her guardian, and even though the latter was appointed to represent the minors in a suit and elsewhere, and Dionisia Tomás Lebrón, pursuant to the provisions of §240, did not need to be represented in court, it was sufficient for the guardian to confine himself to representing her in those matters where the law required his consent. The appearance of the husband was not necessary. With the appearance of the guardian alone, her capacity was established, and therefore the first ground of the registrar's refusal lacks merit. See *Heirs of De Jesús* v. *Heirs of Castro*, 62 P.R.R. 556.

■ As to the fact of whether a partition is an alienation, this court has repeatedly held that "The partition is an exchange among the heirs of their indeterminate parts in the inheritance for a certain and specific part of it which they receive." *Del Rosario et al.* v. *Rucabado et al.*, 23 P.R.R. 438; *Latorre* v. *Registrar*, 24 P.R.R. 187; *Ex parte Sotomayor et al.*, 24 P.R.R. 172; *Aponte* v. *Registrar*, 30 P.R.R. 730; *Sosa* v. *Sosa* (1941), 58 P.R.R. 474.

 The second ground of the registrar's refusal is based on the contention that the urban property, which by exchange became the exclusive property of the children of Don Francisco Tomás Vich, cannot be object of liquidation in the act of partition. The registrar likewise maintains that said property may not be adjudicated to the widow for the payment of debts, in view of the fact that the latter is not a co-owner of said property and that she has no interest therein.

The property in question, as we have already said, was acquired by the children of Mr. Tomás by exchanging all their separate properties left by the latter on his death. Since the widow waived her legal portion of usufruct therein, said property was recorded in the registry as belonging exclusively to said children. Said real property was not subject to the partition in itself (see Deed of Partition, page 10), but it was adjudicated to the widow for the payment of debts (Deed of Partition, page 11), the value of said property ($500) being paid to the children in a larger share of a property having a greater area (21,588 acres) which is described under letter "A" in the deed of partition (page 3, bottom), thus consolidating all the paternal inheritance into one property alone, of which they were owners almost in its entirety (18,888 acres). (See page 12, deed of partition).

The urban property, recorded in favor of the minors, was part of the paternal inheritance for, although they had acquired it by exchange, they had alienated in exchange therefor certain property of the inheritance which had been substituted by the former. In this exchange, said property did not lose its hereditary character. Dealing with this same question in *Vaquer v. Registrar* (1942), 60 P.R.R. 706, this court, citing Manresa, stated on page 711:

"Exchange of one property for another, of jewelry, cattle (*semovientes*), etc., when the transaction must be considered as an exchange. The thing acquired is always a substitute for that which is alienated, regardless of its value."

Reference is also made to the case of *Cot* v. *Registrar*, 15 P.R.R. 470, which is cited to support the text in 31 C.J. 28, §1109, thus:

" 'Property received in exchange for other property whether community or separate as a general rule acquires the character of the property for which it is exchanged.' "

In view of the fact that the property was part of the hereditary estate, the same was liable, together with the other properties inherited by the children, for the debts which said heirs were bound to pay. Thus, pursuant to the provisions of §605 of the Code of Civil Procedure, it could have been adjudicated to one of the heirs as well as to a third person (*tercero*) for the payments of debts. This Section provides as follows:

"That whenever the partition of an inheritance is made wherein minors or incapacitated persons are interested, if property of the estate is to be adjudicated in payment of debts to heirs or others, the matter shall be submitted to the district court of competent jurisdiction for approval, and if said court, after hearing the fiscal, becomes convinced of the certainty of the debt and that the adjudication in payment of same is reasonable and just, it may approve such adjudication in payment of the debt without a public sale."

According to the language of this Section, it does not matter that the property in question is adjudicated for the payment of debts to the mother or to a third person, since it could have been adjudicated to an heir as well as to a stranger for that same purpose. The partition was made in accordance with the procedure established by said Section of civil procedure, and the court became convinced of the certainty of the debt, that the adjudication was reasonable and just, and also that the rights of the minors were at all times protected.

We see no reason why the registrar refused to record on the second ground. This court has repeatedly held that a registrar of property has no power under the Mortgage

Law, to review questions of fact or of law determined by a district court. *Suárez* v. *Registrar*, 35 P.R.R. 676; *Caballero* v. *Registrar*, 35 P.R.R. 564. Said power extends only to passing on all documents issued by judicial authority for the purpose of determining whether the judge had jurisdiction of the subject matter, the nature and effects of the order, whether it was entered at the proper hearing, whether at this hearing the essential proceedings and rules for its validity were observed, and whether it contains all the facts which, according to the Mortgage Law, are required for its recordation. *Cintrón* v. *Registrar*, 35 P.R.R. 737; *Heirs of Trías* v. *Registrar*, 59 P.R.R. 462.

The third ground of the Registrar's refusal is likewise incorrect. According to §605 of the Code of Civil Procedure, the procedure prescribed by said Code need not be followed in order to alienate the property belonging to minors, whenever in the partition of the estate minors are involved. In the event that the adjudication made to the widow for the payment of debts of the property belonging exclusively to the children, among whom were minors, should be considered an exchange, the approval by the court of said act took the place of the previous judicial authorization required by §§614, 615, and 616 of the Code of Civil Procedure.

The ruling appealed from must be reversed.